# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2619

_____

United States of America,

        Appellee,

v.

Jorge Granillo,

        Appellant.

\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Southern District of Iowa
\*
\*
\*

_____

Submitted:  December 10, 2001

Filed:  May 2, 2002

_____

Before McMILLIAN and MURPHY, Circuit Judges, and BATTEY,[1] District Judge.

_____

McMILLIAN, Circuit Judge.

Jorge Granillo (defendant) appeals from a final judgment entered in the United States District Court[2] for the Southern District of Iowa upon a jury verdict finding him guilty of conspiracy to distribute methamphetamine, possession with intent to distribute methamphetamine, and illegal re-entry into the United States. Defendant

_____

[1]The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

was sentenced to life imprisonment and ten years of supervised release, and he was ordered to pay $300.00 in special assessments and, if deported from the United States, not to return without authorization. United States v. Granillo, 4:00-CR-94 (S.D. Iowa June 20, 2001) (judgment). For reversal, defendant argues that the district court (1) abused its discretion in denying his motion for a transfer of venue, (2) erred in denying his motion to suppress evidence obtained as a result of an investigatory stop, (3) erred in denying his motion to suppress his confession, and (4) erred in enhancing his sentence based upon prior drug-related convictions. For the reasons stated below and pursuant to 8th Cir. R. 47B, we affirm the judgment of the district court.

Jurisdiction in the district court was proper based upon 18 U.S.C. § 3231. Jurisdiction in this court is proper based upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(b).

Defendant was indicted in the Southern District of Iowa on December 15, 1999, on a charge of illegal re-entry into the United States, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), and he was additionally indicted on April 11, 2000, on charges of conspiracy to distribute methamphetamine and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 821(a), (b)(1)(A) and 826. He was subsequently charged in a superseding indictment consolidating the illegal re-entry count and the two drug-related counts. The drug-related charges were based upon the discovery of methamphetamine in a hotel room where defendant had been staying in Des Moines, Iowa, and his related confession.

On August 4, 2000, defendant moved for a change of venue pursuant to Fed. R. Crim. P. 21, arguing that Hispanics would not be adequately represented on his jury, in violation of his right to a trial by a jury of his peers. The district court denied the motion on August 28, 2000.

On October 3, 2000, defendant filed a motion to suppress evidence on the ground that, prior to his arrest, he was stopped by the police without reasonable suspicion, in violation of his Fourth Amendment rights. The district court held a suppression hearing, and made the following findings of fact.[3] See United States v. Granillo, slip op. at 1-3 (Nov. 9, 2000).

At approximately 8:30 a.m., on November 23, 1999, Officer Lonnie Namanny of the Des Moines Police Department was on duty looking for cars in the Des Moines area with "source state" license plates,[4] when he observed a 1997 tan Toyota Camry with California license plates parked in a Motel Six parking lot. Namanny determined that the car had been rented in California, and he decided to conduct surveillance. At approximately 9:00 a.m., Namanny observed the car leave the parking lot, but he was unable to follow it. Later that day, at approximately 4:30 p.m., Namanny observed the same rental car traveling south on East Fourteenth Street in Des Moines. He and the two other officers with whom he was working at the time decided to follow the rental car. The officers were in plain clothes and traveling in an unmarked car. While they were following the rental car, they observed it make at least two direction changes en route to a house on Second Avenue, stay at the house for about twenty minutes, and then return to the Motel Six where Namanny had observed it earlier that day. The driver parked the rental car in the lot and, together with the passenger, exited the car. At that time, Namanny and the two other officers approached the two men. Namanny recognized the driver, defendant, whom

_____

[3]At the suppression hearing, defendant took the position that only the events prior to and including the point at which the officers initially approached and spoke to him were relevant to his Fourth Amendment reasonable suspicion argument. The district court limited its consideration of the evidence and its findings of fact accordingly. See United States v. Granillo, No.4:00-CR-94, slip op. at 3 n.3 (S.D. Iowa Nov. 9, 2000).

[4]Officer Namanny testified at the suppression hearing that he defines "source states" to include California, Arizona, and Texas. See id. at 2.

Namanny had arrested a few years earlier on a narcotics violation. The officers identified themselves, and Namanny asked defendant for identification. Defendant produced an Arizona identification card with the false name "Arturo" Granillo and stated that he did not have a driver's license. Thereafter, officers searched the rental car and the motel room where defendant had been staying, where they found methamphetamine. Based upon these findings of fact, the district court concluded that defendant had not been "seized" for Fourth Amendment purposes within the relevant time frame. See id. at 7. The district court emphasized that the officers were not in uniform or traveling in a marked police car, they did not touch defendant or his companion, and they did not draw their guns. Moreover, notwithstanding Officer Namanny's "brash attitude" at the suppression hearing, the district court noted that there was no evidence suggesting that – at the time Namanny asked defendant for identification in the parking lot – he used language or a tone of voice indicating that compliance might be compelled. See id. at 6 & n.4. The district court denied defendant's motion to suppress. See id. at 7.

Thereafter, defendant moved to suppress the confession he had given after his arrest, arguing that his confession was induced by promises of leniency and threats of prosecution and was therefore involuntary. The district court held another suppression hearing and found, among other things, that: defendant had been given a Miranda warning both verbally and in writing prior to his confession; he signed the written form waiving his Miranda rights; the English language was not a barrier to his understanding of his Miranda rights or his knowing and voluntary waiver of those rights; he had prior experience with the law enforcement; Namanny truthfully promised that *he* would not contact the INS and that he would inform any relevant prosecutor of defendant's cooperation; Namanny did not make any promises concerning where charges would be brought; and defendant not only confessed to his involvement in the possession and distribution of methamphetamine, but also cooperated with the officers by setting up others with whom he was involved in the drug trade. See id., slip op. at 1-6 & nn. 1 & 2 (Jan. 2, 2001). Based upon these

-4-

findings, the district court concluded that defendant's confession was voluntary and denied defendant's second motion to suppress. See id. at 6-7.

The case proceeded to trial on April 2, 2001. The jury returned a guilty verdict on all three counts in the indictment on April 3, 2001. At his sentencing hearing on June 20, 2001, defendant argued that, for purposes of applying the penalty enhancements under 21 U.S.C. § 841(b)(1)(A),[5] the district court could not use his 1996 felony drug-related conviction, which he claimed was based upon an involuntary guilty plea resulting from ineffective assistance of counsel. Upon consideration of extensive testimony by defendant, as well as the full record from the 1996 criminal case, the district court concluded that the prior conviction was properly entered based upon defendant's voluntary guilty plea and not the result of ineffective assistance of counsel. See Sentencing Transcript at 3-54 (June 20, 2001).[6] The district court sentenced defendant to mandatory life imprisonment on the two drug-

---

[5]21 U.S.C. § 841(b)(1)(A) provides in relevant part: "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release."

[6]The district court essentially held that, even assuming the truth of defendant's allegations (which had significant credibility problems), defendant had not been prejudiced by his attorney's allegedly defective representation. The district court explained:

> I find Judge Vietor [the judge presiding in the 1996 criminal case] was extremely thorough and careful and did everything he could to protect the Defendant's rights. [Judge Vietor] made it clear to [defendant] that he was not required to plead guilty, it was his choice. And basically the Defendant in testifying today is telling this Court he lied to Judge Vietor while he was under oath. That really damages his credibility before me.

Sentencing Transcript at 53 (June 20, 2001).

related counts and twenty years imprisonment on the illegal re-entry count, to run concurrently. Defendant timely appealed.

Defendant first argues that the district court abused its discretion in denying his request for a change of venue based upon the under representation of Hispanics in the Southern District of Iowa. Notwithstanding defendant's evidence suggesting that Hispanics comprise a small portion of the population in the state of Iowa, defendant did not present evidence indicating that his ethnic background would prevent jurors from being fair and impartial or that Hispanics were otherwise the target of purposeful discrimination in the jury selection process within the Southern District of Iowa. We therefore hold that the district court did not abuse its discretion in denying defendant's request for a change of venue. Cf. United States v. Garcia, 836 F.2d 385, 388 (8th Cir. 1987) (rejecting the defendant's challenge to his conviction on the ground that the lack of Mexican-Americans on his jury violated his equal protection rights, where the defendant "gave the court no reason to conclude that lack of significant number of Mexican-Americans on his venire was anything other than the innocent result of a lack of a significant number of Mexican-Americans in the community from which the venire was drawn").

Defendant next argues that the district court erred in denying his motion to suppress evidence obtained as a result of the investigatory stop in the Motel Six parking lot. Citing United States v. Nicholas, 448 F.2d 622 (8th Cir. 1971) (Nicholas), defendant argues that a Fourth Amendment seizure occurred as soon as the officers approached defendant and asked to see his identification, and that the seizure was not justified by reasonable suspicion as required by Terry v. Ohio, 392 U.S. 1 (1968). Upon review, we cannot say that any of the district court's pertinent findings of fact are clearly erroneous. Based upon those findings, and consistent with post-Nicholas case law, we agree with the district court that no Fourth Amendment seizure had occurred as of the time the officers approached defendant and asked for identification. See, e.g., United States v. Mendenhall, 446 U.S. 544, 553-55 (1980) (seizure occurs

when person's freedom of movement is restrained by means of physical force or a show of authority). We therefore hold that the district court did not err in denying defendant's first motion to suppress.

Defendant further argues that the district court erred in denying his motion to suppress his confession, which he claims was involuntary. Upon review, we again perceive no clear error in the district court's pertinent findings of fact. We agree with the district court's conclusion that defendant knowingly and intelligently waived his Miranda rights and that Officer Namanny did not make any threats or promises that would have rendered defendant's confession involuntary. Accordingly, we hold that the district court did not err in denying defendant's second motion to suppress.

Finally, defendant argues that the district court erred in sentencing him to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A). Defendant maintains that his 1996 drug-related felony conviction was based upon an invalid guilty plea – the product of ineffective assistance of counsel. Under 21 U.S.C. § 851(c)(2), a defendant may challenge the use of a prior conviction for sentencing purposes by timely raising a constitutional challenge to the validity of that prior conviction. In the present case, defendant timely challenged the validity of his 1996 predicate conviction. However, upon review of the district court's thorough consideration of this issue at the sentencing hearing, we agree with the district court that defendant failed to show that his prior conviction was the result of ineffective assistance of counsel under the constitutional standards in Strickland v. Washington, 466 U.S. 668 (1984). See Sentencing Transcript at 3-54. We therefore hold that the district court did not err in sentencing defendant to a mandatory term of life imprisonment under 21 U.S.C. § 841(b)(1)(A).

The judgment of the district court is affirmed. See 8th Cir. R. 47B.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.