# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3751

_____

United States of America,

        Plaintiff-Appellee,

v.

Oscar Manuel Ferrer-Montoya, also
known as Nomar Barron-Escalante,

        Defendant-Appellant.

Appeal from the United States
District Court for the Southern
District of Iowa.

[PUBLISHED]

_____

Submitted: April 13, 2007
Filed: April 19, 2007

_____

Before MELLOY, BOWMAN, and GRUENDER, Circuit Judges.

_____

PER CURIAM.

A grand jury indicted Oscar Manuel Ferrer-Montoya for possessing fifty or more grams of methamphetamine with intent to deliver. 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). The district court[1] denied Ferrer-Montoya's motion to suppress evidence and statements he made to police officers after his arrest. Ferrer-Montoya entered a conditional guilty plea that preserved his right to appeal the district court's

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

denial of his motion to suppress, and that appeal is now before us. We affirm the judgment of the district court.

## I. BACKGROUND

Ferrer-Montoya was driving in excess of the posted speed limit on Interstate 80 near Des Moines when Troy Hildreth, an Iowa State Patrol trooper, pulled him over. Ferrer-Montoya had no title to the vehicle or proof of insurance, and he handed Hildreth a Mexican driver's license that gave his name as Nomar Barron-Escalante. Hildreth asked Ferrer-Montoya for proof of his legal immigration status, and Ferrer-Montoya eventually admitted to Hildreth that he had entered the country illegally. Also, Ferrer-Montoya's description of his travel plans was vague and inconsistent. Suspicions aroused, Hildreth gave Ferrer-Montoya a citation for speeding and asked whether there were any drugs in the vehicle. Ferrer-Montoya said he "didn't think so" and gave Hildreth both verbal and written consent to search the vehicle. Hildreth told Ferrer-Montoya that he would search the vehicle, and advised Ferrer-Montoya that "if you need to holler at me [during the search], just go ahead and do that."

A local officer with a drug-sniffing dog arrived at the scene, and the officers directed the dog around and through the vehicle. The dog did not alert to the presence of any drugs. The officers then physically searched the vehicle. Hildreth, an experienced officer with training in drug interdiction and the use of hidden compartments in vehicles to smuggle contraband, noticed scarring on two screws that held the console panel in place. Hildreth removed the screws, lifted the panel, and noticed that someone had cut the frame underneath to create a hidden compartment. Within that compartment, he found two packages containing methamphetamine.

Hildreth placed Ferrer-Montoya under arrest, verbally informed him of his Miranda rights, and gave him a written copy of the rights in Spanish. Ferrer-Montoya said he understood his Miranda rights. Hildreth asked Ferrer-Montoya if he wanted

-2-

to say anything, and Ferrer-Montoya asserted that he had "told you before [of my travel plans]. . . . I just told you what I know. . . . What else can I say?" Hildreth did not engage in further substantive interrogation regarding the narcotics.

Hildreth took Ferrer-Montoya to a nearby highway patrol post, where they were met by state narcotics agents Patrick Waymire and Kelly Maggers. Hildreth told Waymire that Hildreth had previously advised Ferrer-Montoya of his Miranda rights. Waymire and Maggers asked Ferrer-Montoya about Hildreth's assertion, and Ferrer-Montoya confirmed that he had been read his Miranda rights approximately one hour earlier and that he understood them. He then cooperated in answering substantive questions from Waymire and Maggers.

A grand jury indicted Ferrer-Montoya on a drug-trafficking charge, and Ferrer-Montoya moved to suppress the packages of methamphetamine and his statements to Waymire and Maggers. The district court held an evidentiary hearing and denied the motion. Ferrer-Montoya thereafter pled guilty to the charge, but he reserved his right to appeal the denial of his motion to suppress. On appeal, he argues that the district court's denial of the motion was erroneous in two respects. First, he argues that the removal of the scarred screws and lifting of the console panel exceeded the scope of his consent to search the vehicle. Second, he argues that his self-incriminating statements to Waymire and Maggers were made after he had invoked his right to remain silent and without a fresh recantation of the Miranda warnings, and therefore his statements were inadmissible under the Fifth Amendment. We address these arguments in turn.

## II.  DISCUSSION

We review a district court's factual findings relating to a motion to suppress evidence for clear error and its legal conclusions de novo. United States v. Jimenez, 478 F.3d 929, 931 (8th Cir. 2007). Under the Fourth Amendment, we determine the

scope of a suspect's consent to a search under an "'objective' reasonableness" standard; that is, "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). "The scope of a search is generally defined by its expressed object," id., and therefore an officer may reasonably interpret a suspect's unqualified consent to search a vehicle for drugs to include consent to, inter alia: "search containers within that car which might bear drugs," id.; probe underneath the vehicle, United States v. Siwek, 453 F.3d 1079, 1082-83, 1085 (8th Cir. 2006); and open compartments that appear to be false, United States v. Barragan, 379 F.3d 524, 530 (8th Cir. 2004), or puncture such compartments in a minimally intrusive manner. United States v. Martel-Martines, 988 F.2d 855, 858 & n.3 (8th Cir. 1993).

In the present case, Ferrer-Montoya placed no qualifications or limitations upon his consent to Hildreth's search of the vehicle for drugs. During the search, Hildreth noticed the scarred screws and believed, based upon his experience, that they may have concealed a compartment where one could hide drugs. He opened the compartment in a minimally intrusive manner by removing the screws, and he did no damage to the vehicle in the process. At no time did Ferrer-Montoya object or suggest that he wished to withdraw his consent to the search. Therefore, under our precedent, we cannot say that the search of the false compartment exceeded the scope of Ferrer-Montoya's general consent to search the vehicle for drugs.[2]

---

[2]Ferrer-Montoya argues that the district court should have suppressed the methamphetamine because the drug-sniffing dog's initial failure to alert "removed any reason to conduct such an [in]vasive search." Because this search was consensual, we fail to see the relevance of Ferrer-Montoya's argument. In consensual-search cases, the permissible scope of the search is not a question of probable cause or reasonable suspicion but rather of the reasonable interpretation of the consent the suspect gave to the officer to conduct the search. A trained dog's failure to alert may reduce the likelihood that a particular vehicle contains narcotics, but it has no bearing upon what a "typical reasonable person [would] have understood by the exchange between the officer and the suspect" in the initial grant of consent to a search. Jimeno, 500 U.S. at 251.

We turn next to Ferrer-Montoya's Fifth Amendment claim. It is uncontested that Hildreth read Ferrer-Montoya his Miranda rights, that Ferrer-Montoya understood them, and that Ferrer-Montoya was not receptive to Hildreth's initial offer to talk about the drugs. Ferrer-Montoya argues that his unwillingness to discuss or confess to the crime immediately after receiving the Miranda warnings constituted an invocation of his right to remain silent, which must be "scrupulously honored" by interrogating officers. Michigan v. Mosley, 423 U.S. 96, 104 (1975). A suspect invokes his right to remain silent by making "a clear, consistent expression of a desire to remain silent." United States v. Thompson, 866 F.2d 268, 272 (8th Cir. 1989). Indirect, ambiguous, and equivocal statements or assertions of an intent to exercise the right to remain silent are not enough to invoke that right for the purposes of Miranda. United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995). "Being evasive and reluctant to talk is different from invoking one's right to remain silent." Mann v. Thalacker, 246 F.3d 1092, 1100 (8th Cir. 2001). The question of whether a suspect invoked his right to remain silent is a factual determination for the district court, and we review it for clear error. United States v. Cody, 114 F.3d 772, 775 (8th Cir. 1997).

The district court did not find that Ferrer-Montoya had invoked his right to remain silent; the court merely found that Ferrer-Montoya "declined to answer questions" during the time at issue. The videotape recording of the stop and arrest, which was submitted as evidence at the suppression hearing, supports the finding that Ferrer-Montoya did not invoke his right to remain silent. He answered basic questions from Hildreth during the twenty-minute drive to the highway patrol post, asked about the possible penalty for the offense, and engaged in a conversation involving routine topics such as the weather and global climate change. Furthermore, his initial statement, "What else can I say?," does not constitute an unequivocal expression of a desire to remain silent. Therefore, we find no clear error in the district court's implied determination that Ferrer-Montoya did not invoke his right to remain silent.

We also determine that the district court did not clearly err when it found that the failure of Waymire and Maggers to re-read the <u>Miranda</u> warnings to Ferrer-Montoya did not require the exclusion of his later statements to them. Only one hour had passed since Hildreth read the <u>Miranda</u> warnings to Ferrer-Montoya in full, and Ferrer-Montoya told Waymire that he had been read his rights and understood them. Moreover, there is no evidence of any event in that intervening hour that would lead us to conclude that the warnings provided by Hildreth had gone stale or needed full reiteration: Ferrer-Montoya was in police custody the entire time, he does not allege any coercive conduct by the police, and, as stated above, he did not invoke his <u>Miranda</u> rights. Under the circumstances, Waymire and Maggers did not need to fully re-state the <u>Miranda</u> warnings prior to their interrogation of Ferrer-Montoya.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.

_____