# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2189

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * District of Nebraska. |
| Santiago Lopez-Mendoza, | * |
| | * |
| Appellant. | * |

_____

Submitted: March 12, 2010
Filed: April 15, 2010

_____

Before SMITH, BENTON, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Santiago Lopez-Mendoza pled guilty to one count of possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1). In the plea agreement, Lopez-Mendoza reserved the right to appeal the district court's[1] denial of his motion to suppress. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I.

At about 8:30 a.m. on December 29, 2007, Rene Manuel Vargas-Miranda and his passenger, Santiago Lopez-Mendoza, pulled into a Nebraska gas station in a Dodge Magnum with New York plates. Vargas-Miranda entered to buy coffee, and talked casually with county deputy Randy Brown inside. Brown was in uniform and visibly armed. Vargas-Miranda mentioned his car belonged to his girlfriend in New York, and he was driving there to stay two or three weeks.

As Vargas-Miranda was leaving, Deputy Brown asked for his license and registration. Vargas-Miranda provided a California driver's license. He did not have registration, but produced an insurance card with the name Jessica Roldan. The deputy took the card and asked Vargas-Miranda the name of the car's owner. Vargas-Miranda tried to read the card in the deputy's hand, then said Lopez-Mendoza's girlfriend owned the car. When asked how he and Lopez-Mendoza planned to return to California, Vargas-Miranda said they would probably rent a car.

Deputy Brown approached the car and asked Lopez-Mendoza who owned it. Lopez-Mendoza answered "Jessica Roldan." Asked about travel plans, Lopez-Mendoza said he and Vargas-Miranda were going to New York for two or three days and flying back to California. At this point, Vargas-Miranda said that Lopez-Mendoza does not speak English; Lopez-Mendoza then told the deputy he does not speak English. The deputy noticed seven or eight air fresheners in the vehicle. He turned on the camera in his nearby patrol car.

Deputy Brown returned Vargas-Miranda's documents and thanked him for talking. He then asked if Vargas-Miranda had drugs in the car. Vargas-Miranda replied "no." Asked about heroin, Vargas-Miranda laughed and said he left it at home.

Deputy Brown asked, "Do you care if I look and see?," simultaneously pointing two fingers first toward his eyes and then at the car. Vargas-Miranda said "go ahead," but after a pause added, "You don't got no right. I wasn't even driving." Deputy Brown responded, "Well I'm asking you. I'm just asking you. I'm asking you. But like you said, it's all consensual. I'm just asking you." After asking about weapons, he went on to say, "Well, I'll tell you what, since you said I could look, I'm going to go ahead and look real quick, and then get you guys on your way." In response, Vargas-Miranda nodded his head.

Deputy Brown asked Vargas-Miranda and Lopez-Mendoza to stand by a nearby picnic table while he searched the car. After calling for back-up, Deputy Brown drove his patrol car behind the Dodge Magnum and got his drug-sniffing dog out of the car. Circling the Dodge Magnum, the dog did not alert. The deputy searched the rear cargo area, using a cordless drill to remove mismatched drywall screws from a side panel. Meanwhile, another officer arrived and placed Vargas-Miranda and Lopez-Mendoza in his patrol car.

Finding nothing in the rear area, Deputy Brown moved to the glove compartment. He saw a loose piece of fabric and noticed the rivets used to tack it to the back of the glove compartment had been removed. He found a duct-taped package wedged in the space between the glove compartment and the radio. The dog alerted when sniffing there. The car was towed and the package removed – it contained three pounds of heroin. The search lasted about 30 minutes before the drugs were found. The car was not damaged.

Lopez-Mendoza and Vargas-Miranda were indicted for possessing heroin with intent to distribute. Lopez-Mendoza entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Lopez-Mendoza to 151 months imprisonment.

II.

Lopez-Mendoza appeals the suppression issue, asserting that (1) he and Vargas-Miranda were unlawfully seized, (2) Vargas-Miranda did not consent to the search of the vehicle, and (3) if Vargas-Miranda consented, the deputy's search exceeded the scope of the consent.

Considering an appeal from the denial of a motion to suppress, this court reviews the district court's factual findings for clear error, and its legal determinations de novo. *See **United States v. Stachowiak***, 521 F.3d 852, 854 (8th Cir. 2008). This court will affirm "the district court's denial of a motion to suppress 'unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake was made.'" ***Id.***, *quoting **United States v. Gladney***, 48 F.3d 309, 312 (8th Cir. 1995).

A.

Lopez-Mendoza contends that he and Vargas-Miranda were unlawfully seized by Deputy Brown. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." ***United States v. Drayton***, 536 U.S. 194, 200 (2002). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." ***Id.*** at 201. A consensual encounter may become an unlawful seizure if "it loses its consensual nature." ***United States v. Carpenter***, 462 F.3d 981, 985 (8th Cir. 2006), *quoting **Florida v. Bostick***, 501 U.S. 429, 434 (1991).

According to Lopez-Mendoza, the encounter in this case "quickly turned into an illegal investigatory detention when Deputy Brown took Mr. Vargas-Miranda's driver's license and insurance card." But an officer does not seize a person by asking

for license and registration if he does not "convey a message that compliance with [his] request is required." *Carpenter*, 462 F.3d at 985. *See Bostick*, 501 U.S. at 434 ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."), *quoting Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "Even when officers have no basis for suspecting a particular individual, they may generally ask the individual questions and request to examine his or her identification." *Carpenter*, 462 F.3d at 985; *see also United States v. Granillo*, 288 F.3d 1071, 1075 (8th Cir. 2002) ("no Fourth Amendment seizure had occurred as of the time the officers approached defendant and asked for identification."). Here, Deputy Brown did not convey a message that compliance was required; as the district court found, a reasonable person in Vargas-Miranda's position would feel free to decline the deputy's request and walk away. Instead, Vargas-Miranda provided his driver's license and an insurance card. Deputy Brown reasonably interpreted the "act of providing the documents as consent to retain them for brief examination or check . . . ." *Carpenter*, 462 F.3d at 985.

Lopez-Mendoza argues he and Vargas-Miranda were unlawfully detained when Deputy Brown started asking about drugs, requested to search the vehicle, and searched it. Before he asked to search, Deputy Brown had already returned the license and insurance card to Vargas-Miranda. *See United States v. White*, 81 F.3d 775, 779 (8th Cir. 1996) (where the officer returned White's license and registration and issued a warning ticket following a traffic stop, "White had everything he needed to lawfully proceed on his journey," and the officer's subsequent request to search "came during the course of a consensual encounter and was permissible with or without reasonable suspicion."). After the deputy returned the documents, Vargas-Miranda and Lopez-Mendoza had everything they needed to continue their trip, and their ongoing conversation with the deputy was consensual. Deputy Brown's request to search came during this consensual encounter.

Even if the ongoing conversation were not consensual, Deputy Brown had reasonable suspicion by this time. Reasonable suspicion requires "that the officer's suspicion be based upon particularized, objective facts which, taken together with

-5-

rational inferences from those facts, reasonably warrant suspicion that a crime is being committed." ***United States v. Jones***, 269 F.3d 919, 927 (8th Cir. 2001) (internal quotations omitted). While Deputy Brown's conversation with Lopez-Mendoza dispelled any concern the car was stolen, Lopez-Mendoza's different description of travel plans, sudden statement that he does not speak English, and the many air fresheners in the car, taken together, gave Deputy Brown reasonable suspicion. *See* ***United States v. Foley***, 206 F.3d 802, 806 (8th Cir. 2000) (holding presence of a masking odor in a vehicle, passenger's nervous behavior, passenger's inability to remember the name of his purported daughter-in-law, and vast divergence between passenger's and driver's statements about travel accommodations justified further detention of the vehicle); ***Jones***, 269 F.3d at 928 (8th Cir. 2001) (holding an inconsistent statement about travel plans "casts suspicion and doubt on the nature and legitimacy" of defendants' activity); ***United States v. Pulliam***, 265 F.3d 736, 740 (8th Cir. 2001) (holding inconsistencies in information about the trip and relationship between the driver and passenger justified further detention of the driver while the officer continued to investigate).

B.

According to Lopez-Mendoza, Vargas-Miranda did not voluntarily consent to the search of the car. Whether consent is voluntary is a question of fact, reviewed for clear error. *See* ***United States v. Perez***, 200 F.3d 576, 579 (8th Cir. 2000). "The government bears the burden of proving voluntary consent by a preponderance of the evidence and must show that on the totality of the circumstances the officer reasonably believed that the search was consensual." ***United States v. Almendares***, 397 F.3d 653, 660 (8th Cir. 2005).

> In evaluating the reasonableness of the officer's belief, we consider the characteristics of the person consenting, including the party's age, intelligence and education, whether he was under the influence of drugs or alcohol, whether he was informed of his right to withhold consent, and whether he was aware of rights afforded criminal suspects. We also

consider the environment in which the alleged consent took place, specifically (1) the length of time he was detained; (2) whether the police threatened, physically intimidated, or punished him; (3) whether the police made promises or misrepresentations; (4) whether he was in custody or under arrest when the consent was given; (5) whether the consent occurred in a public or secluded place; and (6) whether he stood by silently . . . as the search occurred.

*United States v. Esquivias*, 416 F.3d 696, 700 (8th Cir. 2005) (internal quotations and citations omitted).

When Deputy Brown asked to look at the vehicle, Vargas-Miranda said "go ahead." Lopez-Mendoza emphasizes that, a moment later, Vargas-Miranda added: "You ain't got no right. I wasn't even driving." According to Lopez-Mendoza, the follow-up statement shows that Vargas-Miranda was not voluntarily consenting, but merely acquiescing to Deputy Brown's authority.

As the district court correctly found, Vargas-Miranda – an adult, conversant in English – conversed with the (visibly) armed Deputy Brown in the convenience store. Vargas-Miranda gave consent to search the car in front of a gas station that was open for business. He was not under arrest when Deputy Brown asked to look in the car; he had his driver's license, the vehicle insurance card, and was free to leave. Vargas-Miranda and Lopez-Mendoza watched the search without objecting or indicating the search should be stopped. On these facts, Deputy Brown reasonably believed Vargas-Miranda consented. *See United States v. Carrate*, 122 F.3d 666, 670 (8th Cir. 1997).[2]

Lopez-Mendoza argues that "go ahead" is insufficient to evidence consent, citing *United States v. Morgan*, 270 F.3d 625 (8th Cir. 2001). *Morgan* is inapposite.

---

[2]While Deputy Brown did not provide Vargas-Miranda with "a written consent form or explicitly inform him of his right to withhold his consent, such actions are not necessary predicates to establish that a person voluntarily consented to a search." *Carrate*, 122 F.3d at 670.

There, the officer asked to search the defendant's van. The defendant asked what would happen if she refused. The officer answered he would walk his drug dog around the car. The defendant said, "go ahead." *Id.* at 628. This court held that "Morgan did not voluntarily consent to a search of the van when she said 'go ahead'" (but held that the officer had probable cause once the dog alerted). *Id.* at 631-32. Here, Vargas-Miranda said "go ahead" in direct response to Deputy Brown's initial request to search.

Lopez-Mendoza asserts that, if given, consent was withdrawn when Vargas-Miranda said: "You ain't got no right. I wasn't even driving." "Conduct withdrawing consent must be an act clearly inconsistent with the apparent consent to search, an unambiguous statement challenging the officer's authority to conduct the search, or some combination of both." *United States v. Sanders*, 424 F.3d 768, 774 (8th Cir. 2005).

Critically, the exchange did not end with Vargas-Miranda asserting "you ain't got no right." Deputy Brown quickly clarified: "Well I'm asking you. I'm just asking you. I'm asking you. But like you said, it's all consensual. I'm just asking you." The deputy went on to say, "Well, I'll tell you what, since you said I could look, I'm going to go ahead and look real quick, and then get you guys on your way." In response, Vargas-Miranda nodded, reasonably communicating his consent.

C.

Lopez-Mendoza asserts that even if Vargas-Miranda consented, Deputy Brown's search exceeded the scope of the consent. "The scope of a consensual search is measured by what the typical reasonable person would have understood by the exchange between the officer and the suspect." *United States v. Brown*, 345 F.3d 574, 580 (8th Cir. 2003) (internal quotations omitted). "The scope of a search is generally defined by its expressed object, and therefore an officer may reasonably interpret a suspect's unqualified consent to search a vehicle for drugs to include

-8-

consent to, inter alia: search containers within that car which might bear drugs; probe underneath the vehicle; and open compartments that appear to be false, or puncture such compartments in a minimally intrusive manner." ***United States v. Ferrer-Montoya***, 483 F.3d 565, 568 (8th Cir. 2007) (per curiam) ((internal quotations and citations omitted). *See also **United States v. Alcantar***, 271 F.3d 731, 738 (8th Cir. 2001) ("[W]hen the police receive consent to search for items that can be hidden in different parts of a car, searching those areas is 'objectively reasonable.'"). Here, Deputy Brown's questions clarified the search was for drugs.

In *Ferrer-Montoya*, state troopers pulled over the defendant for speeding and discovered he was an illegal alien. The state troopers had a drug dog, and the defendant gave consent to search the car for drugs. Though the drug dog did not initially alert, the officers searched the car. The searching officer noticed scarred screws on a console panel. The officer removed the screws and lifted the panel, and "noticed that someone had cut the frame underneath to create a hidden compartment." ***Id.*** at 567. The compartment contained methamphetamine. The officer did not damage the vehicle, and the defendant did not object or withdraw his consent. This court held the officer's search did not exceed the scope of the consent.

Like the officer in *Ferrer-Montoya*, Deputy Brown received consent to search, searched the car although the drug dog did not initially alert, saw that parts of the car had been tampered with, and dismantled those parts of the car without damaging it. Neither Vargas-Miranda nor Lopez-Mendoza objected.

Lopez-Mendoza asserts *Ferrer-Montoya* is distinguishable because the officer in that case asked to "search" the vehicle and the defendant completed a consent form. Here, Lopez-Mendoza emphasizes that Deputy Brown asked only to "look and see" and did not use a consent form. Lopez-Mendoza maintains that consent to "look" is not as broad as consent to "search."

In *United States v. Espinosa*, 782 F.2d 888 (10th Cir. 1986), a border patrol officer asked to "look through" the defendant's automobile, and the defendant agreed. The officer looked in the trunk, glove box, under the dashboard, in the heater area, and under the front seat. He removed the back seat, "spotted two screws missing from the car's left rear quarter panel" and noticed that other screws of the panel were loose. *Id.* at 892. He pulled back the loose corner of the quarter panel and discovered cocaine. The defendant argued that the officer's search of his car exceeded the scope of his consent, because the request to "look through" his automobile was so vague that he did not understand the extent of the search. The Tenth Circuit disagreed, emphasizing that the defendant "stood beside his car expressing no concern during [the] thorough and systematic search." *Id.* "Failure to object to the continuation of the search under these circumstances may be considered an indication that the search was within the scope of the consent." *Id.*

In *United States v. Chaidez*, 906 F.2d 377, 383 (8th Cir. 1990), this court relied on *Espinosa* in rejecting the defendant's scope-of-consent argument. After a speeding stop, a highway patrol officer asked "if it would be okay for him to look in the car." *Id.* at 379, 382. The defendant consented. This court held "that the consent authorized [the officer] not only to look into the car's passenger compartment, but also to run his hand in the opening on the side of the raised cushion and underneath the seat." *Id.* at 383. This conclusion was "buttressed by Chaidez's apparent failure to object during the search," because "Chaidez's behavior during the search is relevant when assessing the scope of the consent . . . ." *Id.* This court noted its decision was consistent with other cases that "upheld even more intrusive searches on similar facts," highlighting *Espinosa*. *Id.*

Here, as in *Espinosa* and *Chaidez*, Deputy Brown asked to "look" in the Dodge Magnum. After giving consent, Vargas-Miranda and Lopez-Mendoza stood nearby, "expressing no concern" during the thorough search. *See Espinosa*, 782 F.2d at 892. At no time did Vargas-Miranda or Lopez-Mendoza "attempt to retract or narrow" consent. *Id.* "Failure to object to the continuation of the search under these

circumstances may be considered an indication that the search was within the scope of the consent." *Id.*

Lopez-Mendoza also contends Deputy Brown's search exceeded the scope of consent because of its duration: Deputy Brown told Vargas-Miranda he was going to look "real quick," but it took about 30 minutes of thorough searching before he found drugs. "[F]ailing to object to the continuation of a consent search makes the continued search 'objectively reasonable.'" *Alcantar*, 271 F.3d at 738 (holding an hour of searching a car for drugs and weapons was within the scope of consent where neither defendant "object[ed] to the length of the search" at any time).

Vargas-Miranda consented to Deputy Brown's request to search his car for drugs. "[W]hen the police receive consent to search for items that can be hidden in different parts of a car, searching those areas is 'objectively reasonable.'" *Id.* Here, Deputy Brown did not exceed the scope of Vargas-Miranda's consent by reasonably searching the car for drugs. *See Ferrer-Montoya*, 483 F.3d at 568-69; *Alcantar*, 271 F.3d 738.

III.

The judgment of the district court is affirmed.

_____