Justice ALITO, dissenting.
This is an unnecessary,[1]impractical, and arbitrary decision. It addresses a purely hypothetical question: whether the traffic stop in this case would beunreasonable if the police officer, prior to leading a drug-sniffing dog around the exterior of petitioner's car, did not already have reasonable suspicion that the car contained drugs. In fact, however, the police officer did havereasonable suspicion, and, as a result, the officer was justified in detaining the occupants for the short period of time (seven or eight minutes) that is at issue.
The relevant facts are not in dispute. Officer Struble, who made the stop, was the only witness at the suppression hearing, and his testimony about what happened was not challenged. Defense counsel argued that the facts recounted by Officer Struble were insufficient to establish *1624 reasonable suspicion, but defense counsel did not dispute those facts or attack the officer's credibility. Similarly, the Magistrate Judge who conducted the hearing did not question the officer's credibility. And as Justice THOMAS's opinion shows, the facts recounted by Officer Struble "easily meet our standard for reasonable suspicion." Ante,at 1623 (dissenting opinion); see also, e.g., United States v. Carpenter,462 F.3d 981, 986-987 (C.A.8 2006)(finding reasonable suspicion for a dog sniff based on implausible travel plans and nervous conduct); United States v. Ludwig,641 F.3d 1243, 1248-1250 (C.A.10 2011)(finding reasonable suspicion for a dog sniff where, among other things, the officer smelled "strong masking odors," the defendant's "account of his travel was suspect," and the defendant "was exceptionally nervous throughout his encounter").
Not only does the Court reach out to decide a question not really presented by the facts in this case, but the Court's answer to that question is arbitrary. The Court refuses to address the real Fourth Amendment question: whether the stop was unreasonably prolonged. Instead, the Court latches onto the fact that Officer Struble delivered the warning prior to the dog sniff and proclaims that the authority to detain based on a traffic stop ends when a citation or warning is handed over to the driver. The Court thus holds that the Fourth Amendment was violated, not because of the length of the stop, but simply because of the sequence in which Officer Struble chose to perform his tasks.
This holding is not only arbitrary; it is perverse since Officer Struble chose that sequence for the purpose of protecting his own safety and possibly the safety of others. See App. 71-72. Without prolonging the stop, Officer Struble could have conducted the dog sniff while one of the tasks that the Court regards as properly part of the traffic stop was still in progress, but that sequence would have entailed unnecessary risk. At approximately 12:19 a.m., after collecting Pollman's driver's license, Officer Struble did two things. He called in the information needed to do a records check on Pollman (a step that the Court recognizes was properly part of the traffic stop), and he requested that another officer report to the scene. Officer Struble had decided to perform a dog sniff but did not want to do that without another officer present. When occupants of a vehicle who know that their vehicle contains a large amount of illegal drugs see that a drug-sniffing dog has alerted for the presence of drugs, they will almost certainly realize that the police will then proceed to search the vehicle, discover the drugs, and make arrests. Thus, it is reasonable for an officer to believe that an alert will increase the risk that the occupants of the vehicle will attempt to flee or perhaps even attack the officer. See, e.g., United States v. Dawdy,46 F.3d 1427, 1429 (C.A.8 1995)(recounting scuffle between officer and defendant after drugs were discovered).
In this case, Officer Struble was concerned that he was outnumbered at the scene, and he therefore called for backup and waited for the arrival of another officer before conducting the sniff. As a result, the sniff was not completed until seven or eight minutes after he delivered the warning. But Officer Struble could have proceeded with the dog sniff while he was waiting for the results of the records check on Pollman and before the arrival of the second officer. The drug-sniffing dog was present in Officer Struble's car. If he had chosen that riskier sequence of events, the dog sniff would have been completed before the point in time when, according to the Court's analysis, the authority to detain for the traffic stop ended. Thus, an action that would have been lawful had the *1625 officer made the unreasonabledecision to risk his life became unlawful when the officer made the reasonabledecision to wait a few minutes for backup. Officer Struble's error-apparently-was following prudent procedures motivated by legitimate safety concerns. The Court's holding therefore makes no practical sense. And nothing in the Fourth Amendment, which speaks of reasonableness,compels this arbitrary line.
The rule that the Court adopts will do little good going forward.[2]It is unlikely to have any appreciable effect on the length of future traffic stops. Most officers will learn the prescribed sequence of events even if they cannot fathom the reason for that requirement. (I would love to be the proverbial fly on the wall when police instructors teach this rule to officers who make traffic stops.)
For these reasons and those set out in Justice THOMAS's opinion, I respectfully dissent.

See Brief in Opposition 11-14.

It is important to note that the Court's decision does not affect procedures routinely carried out during traffic stops, including "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." Ante,at 1615. And the Court reaffirms that police "may conduct certain unrelated checks during an otherwise lawful traffic stop." Ibid.Thus, it remains true that police may ask questions aimed at uncovering other criminal conduct and may order occupants out of their car during a valid stop. See Arizona v. Johnson,555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009); Maryland v. Wilson,519 U.S. 408, 414-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997); Pennsylvania v. Mimms,434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(per curiam).