# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1343

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| David Russell Darr, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 19, 2011
Filed: November 16, 2011

_____

Before RILEY, Chief Judge, COLLOTON, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

David Russell Darr entered a conditional guilty plea to production of child pornography, in violation of 18 U.S.C. § 2251(a). On appeal, he challenges the district court's[1] denial of a motion to suppress evidence. We affirm.

_____

[1] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, adopting the report and recommendation of the Honorable Thomas C. Mummert, III, United States Magistrate Judge for the Eastern District of Missouri.

I.

In January 2010, Lieutenant John Wellman of the Marceline, Missouri, Police Department began investigating David Darr, Sr., father of the appellant, on allegations that he molested a child. Wellman met with the victim, H.H., who described an incident at Darr, Sr.'s home on June 8, 2007. According to H.H., Darr, Sr. fondled H.H. and made H.H. scratch Darr, Sr.'s back and buttocks with a "long handled bath scrub brush."

During the investigation, police learned of two more potential victims, S.O. and J.O. These boys resided in Macon, Missouri, but they visited a grandmother who lives in Darr, Sr.'s neighborhood in Marceline, Missouri. S.O. explained that on July 5, 2009, Darr, Sr. took S.O. to his bedroom, removed S.O.'s pants and underwear, and began to masturbate. During the incident, Darr, Sr. reached to his dresser and retrieved a "white, oval handled brush that would be used to wash your back."

S.O.'s sibling, J.O., who was born on July 12, 1995, described two incidents that occurred in Darr, Sr.'s bedroom when J.O. was thirteen years old. On both occasions, Darr, Sr. placed a substance from a blue and white bottle onto his fingers before inserting them into J.O.'s anus. J.O. believed the substance "was supposed to be put up the nose to make it easier to breath." On one occasion, Darr, Sr. took a "shower type brush" from his bedroom dresser and rubbed J.O.'s back.

H.H. came forward in January 2010 because Darr, Sr. continued to call H.H.'s mother and made over forty attempts to have H.H. return to Darr, Sr.'s home. H.H. told Wellman that Darr, Sr. was also trying to get H.H.'s cousin to spend the weekend with Darr, Sr. J.O. stated that Darr, Sr. had been calling J.O.'s grandmother, asking that J.O. spend the night with Darr. On Feburary 9, 2010, J.O. saw Darr, Sr. drive by J.O's house and give him a "dirty look."

On February 11, 2010, Wellman applied to a Linn County, Missouri, judge for a warrant to search Darr, Sr.'s residence in Marceline, Missouri. Darr, Sr., shared his residence with the appellant Darr. Wellman's supporting affidavit set forth the facts recited above, and concluded with the following:

> Based upon my experience and training as a police officer and the information stated above, it is my belief that the following items relating to the crimes of Child Molestation and Statutory Sodomy are being stored and concealed inside [the] house located upon the premises of 400 West Walker, Marceline, Linn County, Missouri, to wit:
>
> a. Vick's Vapor rub or some equivalent vapor rub,
>
> b. a white bathroom scrub brush with a white oval handle, and
>
> c. a brown bathroom brush with a brown dirty handle.

In his warrant application, Wellman requested authority to search Darr, Sr.'s residence for the items listed above, as well as "[i]ndicia of occupancy, residency, and/or ownership of the premises, including but not limited to, papers, correspondence, cancelled envelopes, cancelled postcards, bills, and registration documents." A Linn County judge issued a warrant to search the residence for all four items.

Officers executed the search warrant later that evening. Upon entering the home, Wellman located a container of what he called Vick's Vapor Rub in the living room. He proceeded to Darr, Sr.'s bedroom, where he found a bathroom brush and more bottles of Vick's Vapor Rub. Under Darr, Sr.'s bed, another officer located Polaroid photographs of a child. While searching Darr's bedroom, Officer Robert Donelson looked in a VHS cassette holder—approximately eighteen inches long, twelve inches wide, and five inches tall—and observed children's underwear and

computer printouts of child pornography. At that point, officers stopped the search and applied for a second search warrant.

The second warrant authorized the seizure of specific digital images found in Darr's bedroom, children's underwear found in the VHS cassette holder, and Polaroid photographs found under Darr, Sr.'s bed. After resuming the search, officers looked in a Coleman cooler in Darr's bedroom. The cooler contained videotapes, a green tin, and a camera memory card. In the tin, officers found pornographic photographs of a juvenile known to Donelson. Officers never found a second bathroom brush.

Officers arrested Darr for possession of child pornography and transported him to the police station. After Donelson advised Darr of the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966), Darr executed a waiver of rights form and made a written statement.

Special Agent Keith Kohne of the Federal Bureau of Investigation subsequently obtained a warrant to search the memory card and videotapes for evidence of federal child pornography offenses. A search of the memory card revealed images of Darr engaged in sex acts with a minor.

A grand jury charged Darr with production of child pornography, in violation of 18 U.S.C. § 2251(a). Darr moved to suppress his statements and all physical evidence. After a hearing, a magistrate judge recommended that the motion be denied. The district court adopted the magistrate judge's recommendation and denied Darr's motion to suppress. Darr entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. The district court sentenced Darr to 180 months' imprisonment.

On appeal, Darr argues that the searches of his bedroom and containers therein violated the Fourth Amendment, and that the evidence seized should therefore be

suppressed. He argues that his statements should be suppressed as the fruits of unlawful searches. We review the district court's factual findings for clear error and its legal conclusions *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 699 (1996).

## II.

Darr argues that the first warrant was not supported by probable cause because it was based on stale information. Although the last alleged incident of molestation occurred in July 2009—approximately seven months before Wellman applied for the first warrant—staleness is a case-specific inquiry, and probable cause cannot be judged "by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." *United States v. Koelling*, 992 F.2d 817, 822 (8th Cir. 1993). Considering the nature of the crimes, ongoing related activity of Darr, Sr., and the nature of the property sought, *see United States v. Horn*, 187 F.3d 781, 786 (8th Cir. 1999), the information set forth in Wellman's affidavit was not so stale as to preclude a determination of probable cause or reasonable reliance on the warrant.

The nature of the items sought in the first warrant was such that it was reasonable to believe that they remained in the home. Darr, Sr. allegedly used the items on more than one occasion; he was said to have used the bathroom brushes during incidents more than two years apart. Police also had information that Darr, Sr. persisted in efforts to contact the children in 2010. H.H. told Wellman that he came forward in January 2010 because Darr, Sr. continued to call H.H.'s mother in an attempt to have H.H. return to Darr Sr.'s home, and because Darr, Sr. also was trying to arrange for H.H.'s cousin to spend a weekend at the Darr residence. J.O. also told police that Darr, Sr. had been calling J.O.'s grandmother to ask that J.O. spend the night with Darr, and that Darr, Sr., had traveled to J.O.'s neighborhood in Macon, Missouri, and given him "a dirty look" in February 2010. That Darr, Sr. sought

additional contact with the children at his home supports an inference that evidence used in such encounters would still be present. At a minimum, given the absence of a precise formula for determining whether case-specific information is too stale to support a warrant, the warrant application was not so lacking in indicia of probable cause as to make official belief in its existence unreasonable, and the evidence was admissible on that basis. *See United States v. Leon*, 468 U.S. 897, 923 (1984).

Darr next argues that officers exceeded the scope of the first warrant by searching his bedroom and the VHS cassette holder. The government responds that the searches were within the scope of the first warrant, and that the evidence was seized lawfully under the plain view exception to the warrant requirement. "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating nature is immediately apparent, and the officer has a lawful right of access to the object." *United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005). "Immediately apparent" means that the officers have probable cause to associate the object with criminal activity. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995).

Because the first warrant authorized the search of the entire premises for the items listed, officers did not exceed its scope by searching Darr's bedroom, even though the warrant was issued based on information about activities of Darr, Sr. *See United States v. Ayers*, 924 F.2d 1468, 1480 (9th Cir. 1991). Nor did officers exceed the scope of the warrant by searching the VHS cassette holder. "[A] lawful search includes all areas where the items listed in the warrant might be found." *United States v. Romo-Corrales*, 592 F.3d 915, 920 (8th Cir. 2010) (internal citation omitted). Because both a container holding Vick's Vapor rub "or some equivalent vapor rub" and indicia of occupancy may be small objects, officers acted within the scope of the first warrant when they searched the VHS cassette holder.

The seizure of the items found in the VHS cassette holder was proper under the plain view exception. The incriminating nature of the printouts of child pornography was immediately apparent. There likewise was probable cause to believe that the children's underwear was associated with criminal activity, given the connection of the clothing to the discovery of child pornography and the sexual offenses described in Wellman's affidavit.

Darr next contends that officers exceeded the scope of the second warrant, which he insists was "not intended to be a general mandate to search for child pornography throughout [his] bedroom." He argues that the second warrant simply authorized the seizure of three particular items that the officers found while executing the first warrant—printouts of child pornography, children's underwear, and Polaroid photographs found under Darr, Sr.'s bed. It follows, according to Darr, that the officers exceeded its scope by proceeding to search the cooler and tin.

We deem it unnecessary to decide whether the second warrant authorized a search of the cooler and tin, because we conclude that those areas were properly searched pursuant to the first warrant. The cooler and tin could have held the items specified in the first warrant—namely, vapor rub and indicia of occupancy—so the officers lawfully searched these containers pursuant to the first warrant. *See Romo-Corrales*, 592 F.3d at 920. The criminal character of the pornographic photographs of a juvenile was immediately apparent, and the photographs were thus lawfully seized under the plain view exception to the warrant requirement. Darr questioned the incriminating nature of the memory card for the first time at oral argument, and we therefore need not consider it. *See United States v. Larison*, 432 F.3d 921, 923 n.3 (8th Cir. 2006).

Finally, Darr challenges the third warrant, which authorized the search of the videotapes and camera memory card seized from the cooler. Darr argues that

Kohne's affidavit did not establish probable cause to believe that the memory card or videotapes would contain illegal images.

An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Kohne's affidavit described the search of Darr's residence, including the seizure of computer printouts of child pornography, children's underwear, and pornographic photographs of a minor. Kohne also explained that images may be maintained on removable memory cards and that child pornographers often use videotapes to create, store, and view child pornography. These facts established probable cause to search the memory card and videotapes, and the warrant application certainly was not so lacking in indicia of probable cause as to make reliance on the warrant objectively unreasonable. *See Leon*, 468 U.S. at 923.

Darr's sole argument for the suppression of his statements is that they were the fruit of illegal searches and seizures conducted under the first and second warrants. For the reasons discussed, this argument fails.

\*     \*     \*

The judgment of the district court is affirmed.

_____