# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2994

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Robert Ellis Hastings, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 16, 2012
Filed: July 17, 2012

_____

Before MURPHY, BRIGHT, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Robert Ellis Hastings entered a plea of guilty to being a felon in possession of a firearm conditioned on his right to appeal the district court's[1] denial of his motions to suppress evidence.  Hastings now appeals, and we affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the report and recommendation of the Honorable Franklin L. Noel, United States Magistrate Judge for the District of Minnesota.

In September 2010, law enforcement officers received a tip that David Paquin, suspected of robbing a bank with the aid of a note saying he had a gun, was hiding in a house on 75th Street in Rochester, Minnesota. Officers commenced surveillance of the house, and on September 13, 2010 Detective Michael Lavigne with the Wabasha County Sheriff's Office began following a Honda automobile that left the premises. At that time, he did not know the identity of the Honda's occupants. While following the Honda, Detective Lavigne, who was driving an unmarked vehicle, was in contact with Deputy Christopher Wallace, who was in a marked patrol vehicle and available to assist if the driver committed a traffic infraction or to approach the Honda's occupants and "strike up a conversation" when the occupants reached their destination.

At the suppression hearing, Detective Lavigne testified that, as he followed the Honda at approximately 8:45 p.m., the weather was clear and he did not recall seeing other vehicles on the road. The Honda was traveling at approximately fifty miles per hour in the far left of the three southbound lanes of the highway when, while positioned "almost directly across from" an exit ramp leading to another highway, the Honda's driver signaled, abruptly moved across the other two lanes of traffic, and "barely ma[de] the off ramp." At this point, Detective Lavigne instructed Deputy Wallace to stop the Honda for executing an unsafe change of course. After Deputy Wallace stopped the Honda, the passenger—later identified as Paquin—fled on foot and Deputy Wallace gave chase. Hastings, the driver of the Honda, remained with the vehicle, and Detective Lavigne approached him and began asking questions. During Detective Lavigne's interaction with Hastings, Detective Lavigne heard gun shots—which he later learned resulted from Deputy Wallace shooting Paquin after Paquin approached him with a knife—and proceeded to handcuff Hastings and place him in the marked patrol vehicle because Detective Lavigne intended to go to the scene of the shooting.

Agent David Schafer with the Minnesota Bureau of Criminal Apprehension ordered that the Honda remain at the scene because it needed to be "electronically mapped and photographed" and retained as evidence. Federal Bureau of Investigation Special Agent Jamie Rohrbaugh, who had been investigating the bank robbery, also decided to hold the vehicle so he could get a warrant to search it for evidence of the bank robbery. The Honda eventually was taken to the Olmsted County Law Enforcement Center. On September 14, officers obtained and executed a warrant to search the Honda and discovered a handgun and a rifle in the vehicle. The handgun later served as the basis for Hastings's felon-in-possession-of-a-firearm conviction.

Meanwhile, Chief Deputy Mark Darnell determined that Hastings should be detained for questioning. Thus, about an hour after the traffic stop, law enforcement personnel transported Hastings to the Adult Detention Center of the Olmsted County Sheriff's Office and placed him in a cell. At some point before 4:00 a.m. on the following morning, September 14, Sergeant Scott Behrns delivered a citation to the booking deputy at the detention center for Hastings's conduct of driving with a suspended license and instructed the deputy that Hastings should be held to see a judge in the morning regarding the citation.

After Hastings was charged in federal court with being a felon in possession of a firearm, he moved to suppress certain evidence that the Government possessed. The district court denied his motions, and Hastings pled guilty, conditioned on his right to appeal the suppression issues. Hastings now argues that (1) there was no probable cause or reasonable suspicion to justify the traffic stop, (2) the period between his initial detention and the time he was charged with driving with a suspended license was unreasonably long, and (3) the firearms were not within the scope of the vehicle search warrant.

We review "the district court's factual determinations in support of its denial of a motion to suppress for clear error and its legal conclusions de novo." *United States v. Hogan*, 539 F.3d 916, 921 (8th Cir. 2008) (quoting *United States v. Harper*, 466 F.3d 634, 643 (8th Cir. 2006)). "We affirm a denial of a motion to suppress unless the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" *United States v. Bay*, 662 F.3d 1033, 1035 (8th Cir. 2011) (quoting *United States v. Annis*, 446 F.3d 852, 855 (8th Cir. 2006)).

Hastings first contends that there was no justification for the traffic stop because the driving behavior that Detective Lavigne described does not constitute an unsafe change of course under Minnesota law, which makes it illegal to "turn a vehicle from a direct course or move right or left upon a highway unless and until the movement can be made with reasonable safety after giving an appropriate signal." Minn. Stat. § 169.19, subdiv. 4. Hastings asserts that his driving was reasonably safe within the meaning of the statute in light of the lack of traffic on the road and Detective Lavigne's ability to follow him onto the ramp.

"[A] traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). "[T]he validity of a stop depends on whether the officer's actions were objectively reasonable in the circumstances, and in mistake cases the question is simply whether the mistake, whether of law or fact, was an objectively reasonable one." *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005)). We need not determine whether Hastings's driving in fact constituted an unsafe change of course within the meaning of the Minnesota statute because it was objectively reasonable for Detective Lavigne to conclude that it was unsafe for Hastings, while traveling at approximately fifty miles per hour and "almost directly across" from the ramp, to abruptly cross two highway lanes, "just barely

-4-

mak[ing] the off ramp." *See United States v. Rodriguez-Lopez*, 444 F.3d 1020, 1022-23 (8th Cir. 2006) (declining to determine the precise meaning of a state traffic law where "the resolution of the case turn[ed] upon whether the [officer's] belief that the statute was violated was objectively reasonable not whether it was in fact violated"). Moreover, even assuming that Hastings's abrupt maneuver did not pose a safety threat to other vehicles due to the absence of observable traffic (other than Detective Lavigne's vehicle), it was objectively reasonable to conclude that the requirement that a change of course be executed with "reasonable safety" encompasses the safety of a driver and his passenger. Therefore, for purposes of Hastings's motion to suppress, the traffic stop was justified.

Second, Hastings argues that the officers unlawfully subjected him to "prolonged detention."[2] *See United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2004) (stating that a law enforcement "officer cannot continue to detain a motorist after the initial stop is completed, unless the officer has 'a reasonably articulable suspicion for believing' criminal activity is afoot" (quoting *United States v. Beck*, 140 F.3d 1129, 1134 (8th Cir. 1998))). The district court did not reach this question but simply determined that the firearms seized from the Honda were not the fruit of the alleged illegal period of detention prior to 4:00 a.m. on the morning after the traffic stop and that intervening circumstances purged any taint from the detention. Hastings challenges this determination, arguing that, absent the detention, he would have left in the Honda before any of the intervening circumstances could have occurred.

"[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to

---

[2]Hastings also asserts that officers did not have justification to search him at the scene of the traffic stop; however, we need not decide this question because Hastings does not identify any evidence seized from his person nor does he make any argument relating the search of his person to the handgun and rifle subsequently seized from the Honda pursuant to a search warrant.

be derivative of an illegality or fruit of the poisonous tree." *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011) (alteration in original) (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)) (internal quotation marks omitted), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1065 (2012).  The evidence should be excluded, however, only "if the 'illegality is at least a but-for cause of obtaining the evidence.'" *Id.* at 1079 (quoting *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007)).  Hastings bears the burden of establishing a nexus between the alleged constitutional violation and the discovery of the firearms. *See id.*  If Hastings sufficiently "comes forward with specific evidence demonstrating taint, the ultimate burden of persuasion to show the evidence is untainted lies with the government." *See id.*  To meet this burden, the Government "must show the evidence obtained after the illegal search was not 'come at by exploitation of that illegality [but] instead by means sufficiently distinguishable to be purged of the primary taint.'" *See id.* (alteration in original) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)).

We assume without deciding that law enforcement officers unlawfully detained Hastings prior to approximately 4:00 a.m. on September 14—the point at which Hastings concedes he could lawfully be held.  We conclude, however, that Hastings has not demonstrated a nexus between this period of detention and the discovery of the firearms.  *See id.* at 1079-80 (stating, where the defendant claimed that his incriminating statements resulted from the illegal discovery of drugs on his person, that the defendant did not provide sufficient evidence of a nexus between the search and his statements).  In particular, Hastings's argument that, but for the prolonged detention, he would have driven the Honda away is flatly contradicted by the record. Agent Schafer and Special Agent Rohrbaugh testified that, for at least two independent reasons—the investigations of the officer-involved shooting and of the bank robbery—law enforcement personnel would not have permitted Hastings to drive the Honda away.  Hastings does not respond to this contention and does not assert that the agents would have lacked authority to detain the Honda.  *See United*

*States v. Sims*, 424 F.3d 691, 693 (8th Cir. 2005) (holding that the impoundment of a vehicle was justified "because police did have probable cause to seize the vehicle, and an automobile may be seized without a warrant under the 'automobile exception' to the warrant requirement"). Furthermore, Hastings does not argue on appeal that the warrant for the search of the Honda was issued without probable cause. As a result, even if the initial duration of the detention was unlawful, the district court did not err by denying Hastings's motion to suppress the firearms.

Finally, Hastings asserts that the district court erred by not suppressing the firearms discovered in the Honda because the officers had "limited authority to seize only those items set forth in the warrant." However, we agree with the district court that the plain-view doctrine permitted seizure of the firearms even though the search warrant did not list them as items to be seized. That doctrine permits an officer to "seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating nature is immediately apparent, and the officer has a lawful right of access to the object." *United States v. Darr*, 661 F.3d 375, 379 (8th Cir. 2011) (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005)). On appeal, Hastings's only argument as to why the plain-view doctrine does not apply is that the incriminating nature of the firearms was not immediately apparent. However, for the incriminating nature of the firearms to be immediately apparent, the officers only needed "probable cause to associate the [firearms] with criminal activity." *See id.* "Probable cause does not require absolute certainty; it only requires 'that the facts available to a reasonably cautious man would warrant a belief that certain items may be contraband or stolen property or useful as evidence of the crime.'" *United States v. Muhammad*, 604 F.3d 1022, 1028 (8th Cir. 2010) (quoting *United States v. Green*, 560 F.3d 853, 858 (8th Cir. 2009)).

Here, Paquin was sought for his role in a bank robbery in which he used a note saying that he had a gun—a fact noted in the warrant affidavit. Hastings argues that the seized rifle could not have been used by Paquin during the bank robbery because

Paquin was dressed in a tank top and shorts and could not have concealed a rifle within such attire. We first observe that it was the handgun, not the rifle, that served as the basis of Hastings's conviction, but we also note that Hastings's ability-to-conceal argument does not foreclose a finding that the rifle's incriminating nature was immediately apparent. For example, Paquin could have planned to retrieve the rifle if bank employees were noncompliant, an accomplice could have used the rifle to provide backup for Paquin, or Paquin could have had the rifle to assist in a potential standoff with the police after he left the bank. Under these circumstances, we hold that the incriminating nature of the rifle and the handgun was immediately apparent.

For the foregoing reasons, we affirm.

_____