# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3495

_____

United States of America,      *
*
      Appellant,      *
      *    Appeal from the United States
    v.      *    District Court for the
      *    District of Nebraska.
Juan Carlos Vera,      *
*
      Appellee.      *

_____

Submitted: March 14, 2006
Filed: August 9, 2006

_____

Before COLLOTON, HEANEY, and GRUENDER, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Juan Carlos Vera was indicted for conspiracy to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court granted Vera's motion to suppress evidence seized during a search of his vehicle. The government appeals, and we reverse.

I.

On September 26, 2004, at approximately 7:00 a.m., Deputy Sheriff William Maddux of Seward County, Nebraska, entered a rest area off the eastbound lanes of

Interstate 80 and pulled his patrol car next to a vehicle parked in the rest area. A person in the driver's seat of the parked car suddenly sat up and looked at Maddux. Maddux testified that he walked over to the vehicle "to make sure everything was all right and just to talk to him." As he exited his patrol car, Maddux noticed that another male was reclining in the passenger seat of the parked vehicle.

The driver of the car, Angel Vera, spoke only Spanish, but the passenger, Juan Vera, did speak English, and Deputy Maddux began to address him. Maddux testified that he then asked Juan Vera whether he "wouldn't mind stepping out so I can talk to him for a few minutes." Maddux recounted that Vera responded, "yeah," exited the car, and walked to the front of the vehicle. Maddux asked if Juan Vera had a driver's licence, and Vera produced it.

Deputy Maddux testified that he asked Juan Vera if he would mind having a seat in the patrol car while Maddux looked at the license, that Vera responded "yeah," and that Vera then sat in the front passenger seat of the patrol car while Maddux sat in the driver's seat. Maddux inquired about the nature of Vera's travels. Vera indicated that he had been in Omaha visiting with an uncle, and that he and his father were returning to California. Maddux asked why Vera was parked on the eastbound side of Interstate 80 if he was driving to California, and Vera replied that after an exit from the highway to purchase fuel and switch drivers, his father had mistakenly entered the highway on the wrong ramp. Vera said that rather than turn around, he and his father decided to sleep at the rest area. Maddux asked Vera who owned the parked car, and after Vera replied that he owned it, Maddux returned Vera's driver's license.

After talking to Vera, Maddux felt that the "vagueness" and "inconsistencies" in Vera's statements were consistent with what he might hear from drug smugglers, and he asked Vera whether there were drugs, weapons, or large amounts of currency

-2-

in the car. Vera said that he had two or three hundred dollars, and no drugs or weapons.

Deputy Maddux testified that immediately after he returned Vera's license, Vera handed his car keys to Maddux, without being asked. Maddux recounted that Vera said, "you can look if you want to," and that when Maddux inquired whether Vera was giving permission to search the vehicle, Vera said, "yeah."

Maddux approached Vera's vehicle and told Angel Vera to get out of the car and stand nearby. Maddux then searched the vehicle and found ten kilo-sized packages of cocaine hidden within a false compartment in the back seat. At one point during the search, Juan Vera attempted to get out of the patrol car, but Maddux told him to get back inside the car.

In his testimony at the suppression hearing, Juan Vera stated that Maddux told him in a loud, authoritative voice to get out of the car at the beginning of the encounter, that he "never behaved in a kindly manner," and that Maddux told him in a loud voice to get into the patrol car. Angel Vera likewise testified that Maddux ordered Juan Vera to exit his vehicle. Juan Vera also testified that Maddux placed his hand on his gun belt when Vera attempted to exit the patrol car, and then shouted at Vera to "shut up" and get back into the car.

After hearing the testimony of Maddux and both Angel and Juan Vera, a magistrate judge found "Deputy Maddux's version of events to be more credible than that of the defendant and his father." (Add. at 13). The magistrate further concluded that "Maddux's conduct in approaching the parked Grand Prix and knocking on the window did not amount to a 'show of authority' such that a reasonable person would believe he was not at liberty to ignore the deputy's presence and go about his business." (Id.). The magistrate found that Vera had voluntarily consented to Maddux's search of the car and recommended denial of Vera's motion to suppress.

On review, the district court "generally agree[d] with the magistrate's recitation of the facts adduced at the hearing" but indicated that it would "supplement the findings as necessary to the court's opinion." (Add. at 17). The court did not make credibility findings to supplement the magistrate's, but on the legal question presented, the court ruled that the consensual nature of the encounter came to an end when Juan Vera was "asked or told" to exit his vehicle. The court further concluded that when Maddux continued to question Vera in the patrol car without informing him that he was free to leave or to refuse to answer questions, no reasonable person would have believed that he was free to terminate the encounter, end the questioning, or leave the rest area. Finally, the court decided Vera's subsequent consent to search did not purge the taint of the illegal detention, and thus granted the motion to suppress.

II.

This appeal focuses on whether Vera was "seized" within the meaning of the Fourth Amendment before he consented to the search of his vehicle. The parties agree that if the encounter between Deputy Maddux and Vera was consensual, then the search of Vera's vehicle based on his consent was reasonable. We review *de novo* whether there was a seizure, and we review the district court's factual determinations for clear error. *United States v. Va Lerie*, 424 F.3d 694, 700 (8th Cir. 2005) (en banc).

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "[M]ere police questioning does not constitute a seizure," and "[s]o long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual." *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). It is "clearly" not a seizure, for example, for an officer to approach an individual in a public setting, identify himself as a police officer, and ask the

-4-

individual to step aside and talk to detectives. *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984) (per curiam). A request to see identification is not a seizure, "as long as the police do not convey a message that compliance with their request[] is required." *Bostick*, 501 U.S. at 435; *see United States v. Slater*, 411 F.3d 1003, 1006 (8th Cir. 2005). There is no *per se* requirement that an officer inform a citizen of his right to refuse consent, and there is no presumption that consent is invalid where given without an explicit notification of the right to refuse. *Drayton*, 536 U.S. at 206-07. That many people agree to speak with police when asked does not tend to suggest that reasonable persons do not feel free to decline: "'While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response.'" *Id.* at 205 (quoting *INS v. Delgado*, 466 U.S. 210, 216 (1984)). In sum, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick*, 501 U.S. at 434.

In applying these principles, the magistrate judge first found "Deputy Maddux's version of events to be more credible" than Juan and Angel Vera's versions, noting that the "main difference" between the stories was that Juan Vera described Maddux's tone of voice as "commanding, authoritative, or loud." (Add. at 13). The magistrate then recommended a conclusion that the encounter between Maddux and Vera was consensual, and that Vera voluntarily consented to the search of his vehicle. The district court, however, sustained Vera's objection to the recommendation, explaining that it "disagree[d] with the magistrate's application of the law to the facts in connection with analysis of the initial stop and accordingly with the conclusion that the defendant voluntarily consented to the search of the vehicle."

The district court did not comment specifically on whether Maddux's explanation of the encounter was more credible than Juan Vera's. The court repeatedly remarked that Vera was "asked or told" to exit his vehicle and enter the

-5-

patrol car, without supplementing the magistrate's finding that Maddux requested Vera's cooperation. In the district court's view, "resolution of the factual issues relating to whether Deputy Maddux's demeanor was 'kindly' or authoritative or whether he motioned, gestured, shouted, knocked on the window are actually of marginal significance to the analysis." (Add. at 32 n.5). On this point, the district court was wrong as a matter of law. An authoritative order or command to exit a vehicle effects a seizure, *see Slater*, 411 F.3d at 1005, while a request – with its implication that the request may be refused – gives "no indication" that consent is required. *Drayton*, 536 U.S. at 206; *see Va Lerie*, 424 F.3d at 710.

Once it is recognized that there is a constitutionally significant distinction between an official command and a request that may be refused, the record demonstrates that Vera was not seized before he gave consent to search. The district court "generally agree[d]" with the magistrate's recitation of facts (unless supplemented), and the district court's ruling was based on its "disagree[ment] with the magistrate's application of the law to the facts," not on its view that key factual findings by the magistrate were wrong. (Add. at 17). Maddux testified that he asked Vera whether he would mind exiting his vehicle and entering the patrol car, and the magistrate judge found Maddux's testimony more credible. The district court did not supplement those findings beyond its "general agree[ment]" with the magistrate. Therefore, the record as created by the district court leaves us with a finding that Vera was asked, not ordered, to take the actions in question. Because we read the district court's decision as accepting the magistrate's factual findings unless supplemented in the district court's opinion, we do not apply the "any reasonable view of the evidence" test discussed by the dissent, and of course we make no factual findings of our own. *Cf. post*, at 9 & n.2.[1]

---

[1]In a footnote, the district court stated that "[t]here is no dispute that Juan Vera was told or directed to exit his vehicle, to sit in the squad car, and to remain in the squad car." (Add. at 32 n.5). This passage does not purport to make a credibility finding, and as a statement of historical fact, it is clearly erroneous. There plainly was

-6-

Absent a factual finding that Maddux did more than request Vera to exit his vehicle, provide his identification, and enter the patrol car, there is no basis to conclude that the encounter was anything other than consensual. The record includes no other indicia of coercion. Although Maddux had a holstered firearm, the officer did not brandish a weapon, and because the fact that "most law enforcement officers are armed is well known to the public," a holstered firearm is "unlikely to contribute to the coerciveness" of an encounter with police. *Drayton*, 536 U.S. at 205. The district court made much of the fact that Vera was not informed of his right to discontinue the questioning, but the absence of such advice does not create a presumption against consent, particularly when the citizen is presented with a request that he may decline. *See id.* at 203, 207; *Va Lerie*, 424 F.3d at 710. The district court also noted that Vera was asked "standard drug interdiction questions clearly designed to lead to a request or command to search" his vehicle, but even where officers openly announce in a confined area that they are conducting a narcotics interdiction effort, *Drayton*, 536 U.S. at 198, citizens have "no reason to believe that they [are] required to answer the officers' questions." *Id*. at 203. The district court did not find that there was any application of force or physical contact, or that Maddux made any other intimidating movements. The facts found by the district court do not support the conclusion that a reasonable person would have believed that assent to Deputy Maddux's requests was required, and the district court therefore erred in concluding that Vera was seized.

Vera conceded at oral argument that if he had not been seized at the time he sat in the patrol car with Maddux, then his consent to search the car was sufficient to make the search lawful. Without the premise that Vera was seized, it is clear that his consent was voluntary. *See Va Lerie*, 424 F.3d at 709; *see generally United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). Vera was an adult male who had graduated high school. He was not threatened or intimidated, and there is no

a dispute among the witnesses about the manner in which Maddux communicated with Vera about exiting his vehicle and entering the patrol car.

allegation that Deputy Maddux made any misrepresentations or promises to induce Vera to offer consent. Most importantly, as the magistrate judge found without modification by the district court, Vera offered to let Maddux search the car and handed him the keys spontaneously. Vera then explicitly agreed that he was "giving [Maddux] permission to search."

The order of the district court suppressing evidence is reversed, and the case is remanded for further proceedings consistent with this opinion.

HEANEY, Circuit Judge, dissenting.

I respectfully dissent. The majority not only disregards determinations made by the district court, it assumes the district court's role by rendering its own judgment about disputed factual matters. As an appellate body, that is clearly outside this court's province.

The key issue in this case is whether Juan Carlos Vera was unconstitutionally seized. That determination turns on whether Vera was ordered or requested to exit his vehicle, and whether he was asked or directed to enter Deputy Maddux's patrol car. Accord United States v. Slater, 411 F.3d 1003 (8th Cir. 2005); United States v. Barry, 394 F.3d 1070 (8th Cir. 2005). The district court found the resolution of these issues unnecessary because it believed there was "no dispute that Juan Vera was told or directed to exit his vehicle, to sit in the squad car, and to remain in the squad car." (Add. at 32 n.5.) I agree with the majority that it was, in fact, disputed whether Vera was asked or ordered to exit his vehicle and sit in the squad car. Thus, the district court made an error of fact in this regard.

I part ways with the majority on how this matter should be rectified. An error of fact made by the district court does not empower this court to make its own factual determinations. That is, and always has been, a matter for district courts. Where

disputed facts are left unresolved by the district court and material to the decision it has reached, that court is entitled to resolve those facts in the first instance.[2] United States v. Khabeer, 410 F.3d 477, 483-84 (8th Cir. 2005) (citing Murray v. United States, 487 U.S. 533, 543 (1988)); see also Fed. R. Crim. P. 12(d) ("When factual issues are involved in deciding a motion, the court must state its essential findings on the record."); cf. United States v. Beck, 140 F.3d 1129, 1131-32 (8th Cir. 1998) (reversing the district court's ruling on a motion to suppress on a limited factual record because facts were uncontested). In actively usurping that role, the majority expands this court's role beyond its border.

If the majority is of the view that the court erred in believing a contested matter was undisputed, it ought to remand this case to the district court to resolve the factual disputes. This is particularly true here, where the district court began its analysis by stating it would only supplement the magistrate's findings "as necessary to the court's opinion." (Add. at 17.) Obviously, the district court believed, albeit wrongly, that the level of authority expressed by Deputy Maddux was undisputed. Thus, in the district court's view, it was not necessary to make any credibility determinations with regard to Maddux (who testified that he was kind and questioning) or the Veras (who testified that Maddux barked orders which demanded compliance) on this issue. While that was wrong, it does not empower our court to correct it by essentially making those determinations itself. I would remand this matter to the district court for resolution of the disputed factual matters, and thus respectfully dissent.

_____

[2]In United States v. Bloomfield, 40 F.3d 910, 913-15 (8th Cir. 1994) (en banc), our court accepted the "any reasonable view of the evidence test." Under that approach, we uphold a district court's order on a motion to suppress, even in the absence of explicit findings, if any view of the evidence supports the decision. The majority's course in this case–to accept any view of the evidence supporting *reversal*–is obviously contrary to Bloomfield.