# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-1827

_____

Robert Oglesby

*Plaintiff - Appellant*

v.

Amy Lesan; Chad Hein

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: May 15, 2019
Filed: July 3, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Robert Oglesby appeals the district court's[1] adverse grant of summary judgment on his Fourth Amendment claims against law enforcement officers Amy

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

Lesan and Chad Hein for unlawful seizure, unlawful arrest, and excessive force. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

On January 28, 2013, around 11:00 P.M., Deputy Amy Lesan of the Lancaster County, Nebraska Sheriff's Department responded to a citizen's report about a woman with luggage loitering in the parking lot outside of a Casey's General Store in Hickman, Nebraska.[2]  Around the same time, an acquaintance of the woman, Robert Oglesby, arrived to pick the woman up.  Deputy Lesan recognized Oglesby from Oglesby's prior encounters with the sheriff's department, which included instances where Oglesby made threats against law enforcement.  Deputy Lesan was also aware of reports that Oglesby had access to weapons.  She approached Oglesby and asked for his license and registration, which he provided.  Deputy Lesan then told him to "wait here."

After returning to her car and checking Oglesby's documents, Deputy Lesan discovered that the Lincoln, Nebraska Police Department (LPD) had a broadcast[3] out for him due to a disturbance that had occurred within the Lincoln city limits.  The broadcast indicated that any LPD officer who encountered Oglesby should issue a citation to him.  Deputy Lesan returned Oglesby's documents and told him that LPD had a broadcast out for him.  She did not provide Oglesby with any details about the broadcast.

_____

[2]When reviewing an adverse grant of summary judgment, we must take the facts in the light most favorable to the nonmoving party. Robinson v. Am. Red Cross, 753 F.3d 749, 754 (8th Cir. 2014).  We therefore recite the facts in the light most favorable to Oglesby.

[3]LPD uses the term "broadcast" to refer to a notation in police records indicating that "law enforcement . . . wants to contact and speak with a person but [has] been unable to locate them."  Dep. Amy Lesan 22, Dist. Ct. Dkt. 112-4.

Oglesby told Deputy Lesan that LPD staff could call him if they wished to talk to him. He asked if he was under arrest and Deputy Lesan told him he was not. Oglesby then asked if he could leave. Deputy Lesan told him that he could but that she would follow him. Oglesby got in his car and drove home. Deputy Lesan followed him, calling dispatch on the way to make certain an LPD officer would meet her at Oglesby's residence.

LPD dispatched Officer Chad Hein to take care of the LPD broadcast for Oglesby. Officer Hein, who knew of Oglesby as a dangerous individual who had made threats against law enforcement in the past and had access to weapons, determined, based on existing police reports, that he had probable cause to cite Oglesby for the Lincoln disturbance. He reached Oglesby's residence, which is outside the Lincoln city limits, and completed the citation while waiting for Oglesby and Deputy Lesan to arrive.

Oglesby arrived first, parked in the driveway, and walked toward the house. Officer Hein followed him up the driveway and asked Oglesby to stop and talk. Oglesby asked if Officer Hein had a warrant. Officer Hein replied that he did not need a warrant. Oglesby asked Officer Hein if he was under arrest, and Officer Hein replied, "No." At this point Officer Hein pulled out a stun gun, pointed it at Oglesby, and tased him, with the electrodes becoming embedded in his chest.[4] Oglesby then entered his residence. Officer Hein followed him to the porch and radioed for assistance. Oglesby and his mother began arguing with Officer Hein through the open door to the porch. Oglesby refused to step outside to sign the citation, and Oglesby's mother attempted to close the door.

---

[4]Officer Hein and Deputy Lesan deny that Officer Hein tased Oglesby at this point. Additionally, there is no medical evidence in the record indicating whether the stun gun's electrodes embedded in Oglesby's chest as he claims.

Oglesby states that Officer Hein then burst through the door, knocking Oglesby's mother to the floor, and rushed him. Officer Hein states that he placed his foot between the door and the door frame to prevent the door from closing on Oglesby's mother and injuring her. When Oglesby used his full body weight to attempt to close the door, Officer Hein asked him to let go because his foot was painfully wedged between the door and the door frame. After 10 to 15 seconds, Officer Hein deployed his Taser, which had little effect on Oglesby due to the heavy winter coat he was wearing but did cause him to stop pushing on the door.

The parties agree that Oglesby ran farther into the house. Officer Hein followed and tackled him. The two struggled and Officer Hein deployed his Taser once or twice. Deputy Lesan then entered the home and, after more struggling, the officers handcuffed Oglesby, walked him outside, and turned him over to other LPD officers who had arrived on scene. As a result of these events, Oglesby was charged in state court with hindering, delaying, or obstructing arrest in violation of the Lincoln Municipal Code. See Lincoln, Neb., Mun. Code § 9.08.030 ("It shall be unlawful for any person to intentionally, knowingly, or recklessly . . . physically hinder, delay, interrupt, or in any manner physically oppose any police officer of the city, or any peace officer, in making an arrest."). Oglesby pled no contest, was sentenced to a $500 fine, and did not appeal his conviction or sentence.

Oglesby then filed a 42 U.S.C. § 1983 suit in United States District Court against Officer Hein and Deputy Lesan in their individual capacities, alleging that the officers violated his Fourth Amendment rights by unlawfully seizing him on the Hickman street, unlawfully arresting him at his residence, and using unreasonable force against him. Officer Hein and Deputy Lesan moved for summary judgment based on qualified immunity. Oglesby filed a 111-page single-spaced brief in opposition to the motion for summary judgment, in which he objected to virtually every exhibit the officers submitted with their motion. The officers attached additional exhibits to their reply brief, to which Oglesby also objected.

-4-

The district court overruled all evidentiary objections. It found that Deputy Lesan did not seize Oglesby on the street in Hickman, that the officers had probable cause to arrest Oglesby at his residence, and that the officers were entitled to qualified immunity on Oglesby's excessive force claim because Oglesby failed to show the right at issue was clearly established at the time. The district court therefore granted summary judgment in the officers' favor on all claims. Oglesby now appeals.

We review the district court's grant of summary judgment de novo, taking the facts in the light most favorable to the nonmoving party. Robinson, 753 F.3d at 754. We additionally draw all reasonable inferences in favor of the nonmoving party. Id. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The nonmoving party must cite to specific facts in the record demonstrating a genuine issue of fact for trial and may not rely solely on allegations." Lucke v. Solsvig, 912 F.3d 1084, 1087 (8th Cir. 2019).

Summary judgment is appropriate if a state actor, such as a police officer, is entitled to the affirmative defense of qualified immunity. See Malley v. Briggs, 475 U.S. 335, 340 (1986); Gomez v. Toledo, 446 U.S. 635, 640 (1980). Qualified immunity shields state actors from suit based on official conduct. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam); Anderson v. Creighton, 483 U.S. 635, 641 (1987). To defeat a motion for summary judgment based on qualified immunity, a plaintiff must show that the defendant violated his clearly-established rights. Pearson v. Callahan, 555 U.S. 223, 232 (2009). The analysis thus has two prongs: (1) whether the defendant violated a constitutional or statutory right; and (2) whether that right was "'clearly established' at the time of [the] defendant's alleged misconduct[,]" and courts may address either prong first. Id. (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). "Qualified immunity is appropriate only if no reasonable factfinder could answer yes to both of these questions." Hess v. Ables, 714 F.3d 1048, 1051 (8th Cir. 2013) (quoting Nelson v. Corr. Med. Servs., 583 F.3d 522, 528 (8th Cir. 2009)). In

the police officer context, qualified immunity applies when "reasonable officers in the same position could have believed their conduct was 'lawful, in light of clearly established law and the information the . . . officers possessed' at the time." Waters v. Madson, 921 F.3d 725, 734-35 (8th Cir. 2019) (quoting Anderson, 483 U.S. at 641). With this framework in mind, we now address each of Oglesby's claims on appeal.

## II.

Oglesby first argues that Deputy Lesan unlawfully seized him on the Hickman street when she requested his identification. Consensual encounters between law enforcement officers and citizens that do not involve coercion or restraint are not seizures. United States v. Poitier, 818 F.2d 679, 682 (8th Cir. 1987). "[E]ven when officers have no basis for suspecting a particular individual, they may generally . . . ask to examine the individual's identification . . . as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, 434-35 (1991). "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." Id. at 434. In other words, a police officer does not effect a seizure as long as "a reasonable person would feel free to terminate the encounter." United States v. Angulo-Guerrero, 328 F.3d 449, 451 (8th Cir. 2003).

Courts consider several factors in determining whether a person would feel free to terminate an encounter with police, including

> officers positioning themselves in a way to limit the person's freedom of movement, . . . . the presence of several officers, the display of weapons by officers, physical touching, the use of language or intonation indicating compliance is necessary, the officer's retention of the person's property, or an officer's indication the person is the focus of a particular investigation.

United States v. Griffith, 533 F.3d 979, 983 (8th Cir. 2008) (citation omitted). In United States v. Vera, this Court found no seizure occurred when a deputy asked the defendant to exit his vehicle, produce identification, and wait in the patrol car while the deputy examined his license. 457 F.3d 831, 836 (8th Cir. 2006). This Court concluded that no "reasonable person would have believed that assent to [the deputy]'s requests was required" because the deputy did not use force, physical contact, or "any other intimidating movements[,]" did not draw his weapon, and "[t]he record include[d] no other indicia of coercion." Id.

The record shows that Deputy Lesan arrived on scene, recognized Oglesby, and asked him for his license and registration. Oglesby provided these documents without objection and waited approximately 15 minutes while Deputy Lesan conducted a records inquiry. Oglesby never objected to Deputy Lesan's records search, and when he asked if he was free to leave she told him he was. These are all earmarks of a consensual encounter involving police questioning rather than a seizure. See id. at 835.

Oglesby argues that Deputy Lesan seized him when she told him to "wait here" while she checked his documentation. However, an officer's "use of language . . . indicating compliance is necessary" is only one factor we use to determine if an officer effected a seizure. Griffith, 533 F.3d at 983. The record does not indicate that Deputy Lesan made any show of force or authority when she approached Oglesby. She was alone and did not activate her patrol car's lights or siren, brandish her firearm, physically block Oglesby's departure, or make physical contact with Oglesby. See id. Nor did she threaten Oglesby with arrest or tell him he was the focus of an investigation. Further, while Deputy Lesan held Oglesby's license and registration for 15 minutes, there is no indication that Oglesby requested their return.

Oglesby himself admitted at his deposition that Deputy Lesan did nothing to stop him from leaving other than asking for his identification. Dep. Robert Oglesby 31-32, Dist. Ct. Dkt. 117-4. We therefore find as a matter of law that Deputy Lesan did not restrain Oglesby's liberty through a showing of force, authority, or otherwise. See Bostick, 501 U.S. at 434. We conclude that Deputy Lesan did not seize Oglesby in Hickman and that, therefore, he has shown no violation of his Fourth Amendment rights. We affirm the district court's dismissal of this claim.

III.

Oglesby's second claim alleges that Officer Hein and Deputy Lesan unlawfully arrested him at his residence. The district court found that Oglesby's sole argument—that Officer Hein lacked jurisdiction to perform an arrest for a violation of the Lincoln Municipal Code outside of the city limits—was irrelevant to the Fourth Amendment inquiry. It further found that Officer Hein had probable cause to arrest Oglesby and that, therefore, no Fourth Amendment violation occurred.

In this appeal, Oglesby reasserts his jurisdictional argument. However, for Fourth Amendment purposes, the relevant question is whether an arrest was reasonable, not whether an arrest violated state law or whether an officer was acting within his geographical jurisdiction. Virginia v. Moore, 553 U.S. 164, 178 (2008) (stating that a police officer who has probable cause but violates a state law in effecting an arrest does not violate the Fourth Amendment because "it is not the province of the Fourth Amendment to enforce state law"); Rose v. City of Mulberry, 533 F.3d 678, 680 (8th Cir. 2008) (stating that a city police officer who has probable cause but arrests someone outside his jurisdiction does not violate the Fourth Amendment even if he violates state law). We find, therefore, that Officer Hein and Deputy Lesan did not violate the Fourth Amendment solely by arresting Oglesby outside of the Lincoln city limits.

Oglesby also argues, for the first time before this Court, that Officer Hein lacked probable cause to arrest him. In general, we "will not consider arguments raised for the first time on appeal" unless failure to do so would result in a miscarriage of justice. Trs. of Electricians' Salary Deferral Plan v. Wright, 688 F.3d 922, 926 (8th Cir. 2012). Oglesby failed to raise this argument before the district court. He has therefore waived it, and "[w]e find no miscarriage of justice warranting further analysis." Cole v. UAW, 533 F.3d 932, 936 (8th Cir. 2008). We affirm the district court's dismissal of this claim.

IV.

Next, Oglesby claims that Officer Hein and Deputy Lesan used excessive force in effectuating his arrest. The district court found that Oglesby failed to show that the facts established a violation of his constitutional rights and that, even if they did, those rights were not clearly established at the time of Oglesby's arrest. It therefore granted summary judgment in favor of the officers, finding that they were entitled to qualified immunity. We agree.

On appeal, Oglesby argues that non-violent, non-fleeing suspects have a clearly-established right to not be shot with stun guns. However, in opposition to summary judgment, Oglesby's sole argument against applying qualified immunity was that Officer Hein possessed no authority to arrest him outside of the city of Lincoln. He failed to identify the right at issue, argue that right was clearly established, or cite any case that would have put the officers on notice that their conduct was unconstitutional. By failing to do so, Oglesby waived the arguments he now asserts. See Wright, 688 F.3d at 926. We therefore affirm the district court's grant of summary judgment to the officers on Oglesby's excessive force claim.

V.

Oglesby finally argues that the district court improperly admitted a host of evidentiary materials and relied on those materials in making its decision. "We defer to admissibility determinations under an abuse-of-discretion standard of review, even at summary judgment." Morgan v. United Parcel Serv. of Am., Inc., 380 F.3d 459, 467 (8th Cir. 2004). A district court abuses its discretion in admitting evidentiary materials if those materials could not "be presented at trial in an admissible form." Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 793 (8th Cir. 2012).

Oglesby argues that multiple exhibits Officer Hein and Deputy Lesan submitted[5] were not properly authenticated. However, Oglesby makes no showing that these documents *could not* be presented at trial in an admissible form. We thus find that the district court did not abuse its discretion in admitting these documents. See id. (stating that a district court did not abuse its discretion in admitting evidence when the objecting party "[did] not even attempt to argue that the [evidence] could not have been presented in an admissible form at trial").

Oglesby next argues that Officer Hein improperly attached authentication of several of his exhibits to an index of evidence instead of his attorney's affidavit. However, the district court's local rules require parties to attach exhibits to an index of evidence and to provide an affidavit authenticating those exhibits. See NECivR 7.1(a)(2). Similarly, Oglesby objects to the officers' submission of an index of evidence and supplemental affidavits on reply at summary judgment. However, the district court's local rules provide that a moving party may file an index of evidence attached to a reply brief if it is filed within seven days of the filing of the opposing brief. See NECivR 7.1(c). Oglesby does not argue that the reply was untimely. We

_____

[5]Specifically, Oglesby objects to the submission of the docket report from his state criminal case, the transcript of proceedings in that case, and his own deposition.

-10-

decline to find that the district court abused its discretion in admitting the officers' exhibits pursuant to a local rule.

Oglesby also avers that all evidence related to his state conviction for interfering with an arrest, including a certified copy of the chapter of the Lincoln Municipal Code under which he was arrested, was inadmissible as irrelevant to the instant case. However, a plea of no contest in a matter forecloses a subsequent § 1983 claim for arrest without probable cause. Heck v. Humphrey, 512 U.S. 477, 484 (1994) (stating that a prior criminal proceeding must terminate in favor of the accused to support a later § 1983 claim). Officer Hein raised this defense in response to Oglesby's unlawful arrest claim. Evidence that Oglesby pled no contest to and was subsequently convicted in state court of charges stemming from his arrest was therefore relevant to whether Oglesby could prevail on his unlawful arrest claim. See Fed. R. Evid. 401; see also Heck, 512 U.S. at 484. The district court did not abuse its discretion in finding this evidence relevant and admitting it.

Oglesby finally argues that the district court improperly admitted Deputy Lesan's and Officer Hein's affidavits because those affidavits detail events that occurred at Oglesby's residence, which is outside the Lincoln city limits. Oglesby does not actually explain why he believes this evidence is inadmissible; rather, he reiterates his argument that Officer Hein did not have jurisdiction to arrest him at his residence. Moreover, Deputy Lesan's and Officer Hein's affidavits detail events which underlie this case, of which they have personal knowledge. See Fed. R. Civ. P. 56(c)(4). We therefore conclude that the district court did not abuse its discretion in admitting the affidavits.

VI.

We affirm the district court's judgment in full.

_____

-11-